[665 NYS2d 963]

In the Matter of H. ROGER HANTMAN (Admitted as HAROLD ROGER HANTMAN), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, December 1, 1997

## APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Sharon M. J. Commissiong* of counsel), for petitioner.

*Devit, Spellman, Barrett, Callahan, Leyden & Kenney, L. L. P.,* Smithtown *(Thomas J. Spellman, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was served with a petition containing 17 charges of professional misconduct. After a hearing, the Special Referee sustained Charges One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen and dismissed Charges Six and Seventeen. The Grievance Committee now moves to confirm the Special Referee's report. The respondent has submitted papers in partial opposition to the Grievance Committee's motion to confirm and requests that the Court limit its sanction to a censure.

Charges One, Two, Three, Five, and Seven relate to the respondent's former client, Maria Rashidi.

Charge One alleged that the respondent failed to provide Maria Rashidi with a client's statement of rights and responsibilities prior to her retaining him in a domestic relations matter.

On January 29, 1994, Maria Rashidi consulted the respondent with respect to an ongoing domestic relations matter involving her divorce action, a violation of an order of protection issued against her husband, and modification of her husband's visitation rights with respect to their minor child, inasmuch as she believed that her husband planned to relocate to his native Iraq with their child. Ms. Rashidi retained the respondent on January 31, 1994. The respondent never provided her with a client's statement of rights and responsibilities.

Charge Two alleged that the respondent entered into an arrangement for and collected a fee in a domestic relations matter to which part 1400 of the Joint Rules of the Appellate Division *(see,* 22 NYCRR 1400.1 *et seq.)* is applicable without executing a written retainer agreement signed by the attorney and the client.

The respondent represented Maria Rashidi from January 31, 1994 to April 8, 1994, during which period he charged approximately $17,000 in legal fees. The respondent collected approximately $9,000 in legal fees from Maria Rashidi.

Based on the foregoing, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3

[a] [8]), DR 2-106 (C) (2) (ii) (22 NYCRR 1200.11 [c] [2] [ii]), and DR 9-102 (D) (3) (22 NYCRR 1200.46 [d] [3]).

Charge Three alleged that the respondent charged and collected an excessive fee from Maria Rashidi during the course of his representation.

The respondent withdrew from representing Ms. Rashidi on or about April 8, 1994, on which date he left a message on her answering machine withdrawing as her attorney and severing all communications with her. At the time he withdrew his services, the respondent had not achieved the results for which he was retained, nor was he progressing toward achieving the desired results.

One of the matters for which the respondent was retained by Ms. Rashidi was to obtain modification of a visitation order dated October 28, 1993, on an urgent basis. The respondent instructed her to bring a petition for modification *pro se* in the Family Court Probation Department.

Despite being admonished by the Family Court, the respondent sent letters to a Judge of that court addressing issues pending before it in the Rashidi matter.

The respondent advised Ms. Rashidi that the visitation order dated October 28, 1993 allowed her discretion in granting visitation and further advised her to terminate all visitation. Upon the respondent's advice, Ms. Rashidi unilaterally denied visitation to Mr. Rashidi on or about February 19, 1994. During a subsequent Family Court hearing, Judge Marion T. McNulty warned that further violations of the order could result in holding Ms. Rashidi in contempt. Following said ruling, the respondent advised Ms. Rashidi not to be intimidated by Judge McNulty and to continue denying visitation to Mr. Rashidi.

Upon the respondent's advice, Ms. Rashidi again denied visitation on or about February 27, 1994. Ms. Rashidi was thereafter served with an order to show cause, *inter alia,* adjudging her to be in willful contempt of a court order and transferring custody of the infant to the father.

Ms. Rashidi paid the respondent additional fees of $3,500 to represent her in the contempt proceeding. The respondent thereafter demanded an additional $2,000 from Ms. Rashidi payable on the following morning. The respondent threatened to discontinue representation if she failed to pay the additional fee. Ms. Rashidi paid the additional $2,000 as demanded. Nevertheless, the respondent informed her, on or about April 8, 1994, via her home telephone answering machine, that he was

no longer her attorney and no longer wished to have any communication with her.

By order dated May 9, 1994, Judge McNulty held Maria Rashidi in contempt of court for disobeying the court's visitation order.

The respondent did not present any bills or provide any itemization of his services to Ms. Rashidi during his representation. Pursuant to a complaint filed by Ms. Rashidi, the fee issue was heard by an arbitration panel. The arbitration determination of May 16, 1995 directed the respondent to refund the entire $9,000 fee to Ms. Rashidi and ruled that he is not entitled to any additional monies.

Based on the foregoing, the respondent violated Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), DR 2-106 (A) and (B) (22 NYCRR 1200.11 [a], [b]), and DR 9-102 (D) (5) (22 NYCRR 1200.46 [d] [5]).

Charge Five alleged that the respondent violated a judicial directive in his efforts to modify a visitation order on behalf of Ms. Rashidi, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]) and DR 7-101 (A) (1) (22 NYCRR 1200.32 [a] [1]).

Charge Seven alleged that the respondent improperly withdrew his employment from Maria Rashidi, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]), DR 2-110 (A) (2) (22 NYCRR 1200.15 [a] [2]), and DR 7-102 (A) (5) (22 NYCRR 1200.33 [a] [5]).

By letter dated April 14, 1994, the respondent advised Arnold Firestone, the attorney who succeeded him in representing Maria Rashidi, that he had not withdrawn as counsel. Rather, it was the client who had discharged him without prior notification or consent.

Charges Eight through Ten relate to the respondent's representation of Roy Pertile.

Charge Eight alleged that during the course of his representation of Roy Pertile, the respondent charged and collected an excessive fee, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]) and DR 2-106 (A) and (B) (22 NYCRR 1200.11 [a], [b]).

On or about October 5, 1992, the respondent was retained by Roy Pertile to appeal an adverse child custody order of the Supreme Court, Suffolk County, dated September 9, 1992, and to represent him in a pending divorce litigation. The respondent represented Pertile from October 5, 1992 to about January 5, 1993.

Pertile initially paid the respondent a $200 consultation fee and a $1,000 research fee. On or about October 9, 1992, Pertile paid $10,000 at the respondent's request. The respondent agreed to obtain the trial transcript for $4,000 out of that sum. The respondent retained John T. Clennan as appellate co-counsel. In early November 1992, the respondent sent an initial deposit of $1,750 to the court reporter to begin transcribing the minutes of the custody trial. Shortly thereafter, Pertile requested that the respondent forward an itemized bill to him.

On or about November 22, 1992, the respondent requested that Pertile pay him an additional $6,500 inasmuch as the $11,000 previously paid had been exhausted. The respondent had still not paid for or received the trial transcript.

Pertile once again requested an itemized bill. Although the respondent promised to forward a bill, he failed to do so. In December 1992 the respondent advised Pertile that he would forward a bill when the additional $6,500 was paid. The respondent refused to pay the court reporter the balance due on the trial transcript which had been completed.

The respondent did provide Pertile with bills on or about December 29, 1992 and January 5, 1993.

Pertile discharged the respondent in January 1993. Pertile received a third bill from the respondent, dated after his discharge. The respondent's first bill contained numerous inconsistencies. The respondent charged Pertile for approximately 50 hours of estimated time for research and analysis and "LEXIS" computer research totalling $6,500. The respondent's bill was based on time estimates prior to his ever having reviewed the trial transcript. The respondent's second bill also contained numerous inconsistencies with respect to the amount paid for the transcript and to co-counsel. The respondent again billed Pertile for services not yet rendered. The bill, dated December 11, 1992, charged Pertile for a court appearance which the respondent made on January 22, 1993. The respondent's third bill contained inconsistencies similar to the first two and was ambiguous and confusing.

Charge Nine alleged that the respondent engaged in deceptive billing during the course of his representation of Roy Pertile, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]) and DR 2-106 (A) and (B) (22 NYCRR 1200.11 [a], [b]).

Charge Ten alleged that the respondent failed to pay for a trial transcript on a matter for which he was retained to pros-

ecute an appeal, despite receiving monies from his client for that purpose, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]) and DR 7-102 (5) and (8) (22 NYCRR 1200.33 [5], [8]).

Inasmuch as the order that was the basis of the Pertile appeal resulted from a trial relating to child custody, a review of the trial transcript was necessary in order to determine how to proceed. Although the transcript was completed in December 1992 and the balance of payment was requested by the court reporter, the respondent refused to remit payment. The respondent alleged that he had no obligation to pay for the transcript inasmuch as he had been discharged by Pertile. The respondent further claimed that he was given unbridled discretion with respect to the funds advanced to him by Pertile and he had chosen to use the funds for purposes other than obtaining the trial transcript. The respondent additionally claimed that Pertile advised that he would assume full responsibility for payment.

The court reporter ultimately won a judgment against the respondent for the transcript fee.

The bills submitted by the respondent nevertheless reflect deductions from the $10,000 retainer for payment of the trial transcript.

Charges Eleven through Thirteen relate to the respondent's representation of Kelly Hampton.

Charge Eleven alleged that the respondent failed to provide Kelly Hampton with a client's statement of rights and responsibilities prior to her retaining him in a domestic relations matter.

On or about December 30, 1993, Kelly Hampton retained the respondent to represent her in a divorce action at the rate of $125 per hour. She gave the respondent a check for $750 dated January 4, 1994. At no time prior to his retainer did the respondent provide Ms. Hampton with a client's statement of rights and responsibilities.

Charge Twelve alleged that the respondent entered into an arrangement for and collected a fee in a domestic relations matter to which part 1400 of the Joint Rules of the Appellate Division (see, 22 NYCRR 1400.1 et seq.) is applicable, without executing a written retainer agreement signed by the client, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), DR 2-106 (C) (2) (ii) (22 NYCRR 1200.11 [c] [2] [ii]), and DR 9-102 (D) (3) (22 NYCRR 1200.46 [d] [3]).

The respondent represented Kelly Hampton from December 30, 1993, to March 1, 1994, for which she paid $750 on the day she retained him.

Charge Thirteen alleged that the respondent charged and collected an excessive fee from Ms. Hampton during the course of his representation, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), DR 2-106 (A) and (B) (22 NYCRR 1200.11 [a], [b]), and DR 9-102 (D) (5) (22 NYCRR 1200.46 [d] [5]).

The respondent, during the course of his representation of Kelly Hampton, failed to respond to her telephone calls and inquiries regarding the divorce action. With the exception of writing an introductory letter to Ms. Hampton's husband, the respondent failed to demonstrate that he had taken any action in pursuing the Hampton divorce.

Ms. Hampton discharged the respondent on or about March 1, 1994, citing his inaction and failure to communicate with her, and requested a refund. The client offered to pay the respondent $125 for writing the letter. The respondent, however, asserted his right to keep the entire $750. The respondent refused Ms. Hampton's request for an itemized bill.

On or about September 23, 1994, Ms. Hampton obtained a judgment against the respondent in the District Court, Suffolk County, for $750. She thereafter filed a grievance against the respondent. On or about February 9, 1995, the respondent offered to pay the judgment on condition that Ms. Hampton withdraw her complaint. Ms. Hampton refused to withdraw the complaint.

By letter dated July 7, 1995, the Grievance Committee advised the respondent that his refusal to pay a debt reduced to judgment, arising from his legal practice, is considered misconduct and could result in additional disciplinary action. The respondent remitted a check to Ms. Hampton, dated July 21, 1995, in the sum of $755. The check contained the following notation: "in full settlement of Grievance Committee File No. 5-1957-94."

Charges Fourteen through Sixteen relate to the respondent's representation of Maryann Dobrie.

Charge Fourteen alleged that the respondent failed to provide Maryann Dobrie with a client's statement of rights and responsibilities prior to his retainer in a domestic relations matter.

On or about October 23, 1994, Maryann Dobrie retained the respondent to represent her in a domestic relations matter

involving her receipt of a notice of settlement with an order which was to be signed on November 2, 1994. Upon the respondent's instructions, Ms. Dobrie gave the respondent $1,500 in cash and she executed a consent to change attorney form. At no time prior to the respondent's retainer did he provide her with a client's statement of rights and responsibilities.

Charge Fifteen alleged that the respondent entered into an arrangement for and collected a fee in a domestic relations matter to which part 1400 of the Joint Rules of the Appellate Division (see, 22 NYCRR 1400.1 et seq.) is applicable, without executing a written retainer agreement, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]), DR 2-106 (C) (2) (ii) (22 NYCRR 1200.11 [c] [2] [ii]), and DR 9-102 (D) (3) (22 NYCRR 1200.46 [d] [3]).

The respondent represented Maryann Dobrie for four days from October 23, 1994 to October 27, 1994, at which time she discharged the respondent for inaction and failure to communicate with her.

Charge Sixteen alleged that the respondent charged and collected an excessive fee from Maryann Dobrie in the course of his representation, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]) and DR 2-106 (A) and (B) (22 NYCRR 1200.11 [a], [b]).

On or about October 27, 1994, Ms. Dobrie requested a refund of the $1,500 retainer and the return of her papers. The respondent refused to comply. Upon Ms. Dobrie's repeated demand, the respondent returned her file but again refused to refund the retainer.

On or about July 11, 1995, the Grievance Committee referred the fee dispute aspect of Ms. Dobrie's complaint for mandatory arbitration, pursuant to part 136 of the Rules of the Chief Administrator of the Courts (see, 22 NYCRR part 136). Approximately one week later, the respondent sent Ms. Dobrie $1,050, representing the unused portion of the retainer.

Based on the evidence adduced, the Grievance Committee's motion to confirm the Special Referee's report is granted with the exception of Charge Four.

In determining an appropriate measure of discipline to impose, we have considered the mitigation advanced by the respondent, including his assertion that he had previously served thousands of clients without being subjected to any prior sanctions. He maintains that he has attempted to provide proper

and effective legal representation to people of modest means at a price those people could afford. The respondent alleges that he has specialized in matrimonial and family law matters, an area of the law which allegedly gives rise to a great number of client complaints and grievances. The respondent maintains that he has consistently adjusted his fee request to the client's ability to pay.

Neither the respondent's belated payments of money owed nor his attempts to gather positive character evidence minimize the egregiousness of his conduct with respect to the handling of the subject matters. Under the totality of circumstances, the respondent is disbarred.

ROSENBLATT, J. P., O'BRIEN, RITTER, THOMPSON and JOY, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted to the extent that Charges One, Two, Three, Five, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen are sustained, and denied to the extent that Charge Four is not sustained; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, H. Roger Hantman, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, H. Roger Hantman is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.